08 CIV 7449

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FRANKLIN HAMILTON, LLC,

                              Petitioner,                    Case No.

          -against-                                          **NOTICE OF PETITION**

CREATIVE INSURANCE UNDERWRITERS,
INC.,

                              Respondent.
-------------------------------------------------------------x

AUG 22 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**SIRS/MADAMS:**

**PLEASE TAKE NOTICE,** that upon the annexed Petition, dated August 19, 2008, and

the annexed exhibits, the undersigned attorneys shall apply to the United States District Court for

the Southern District of New York, located at 500 Pearl Street, New York, New York 10007, at a

date, time and place to be set by the Judge to be assigned by the Court to hear this Petition, for an

Order: a) confirming an arbitration award issued on April 22, 2008; b) directing the entry of

judgment upon that arbitration award; c) awarding petitioner its costs and disbursements in this

proceeding, including reasonable attorney's fees; and d) granting petitioner such other, further or

different relief as the Court may deem to be just and proper.

Dated: New York, New York          Yours, etc.,
       August 19, 2008

                                   Stuart L. Sanders (SS-8690)
                                   KAZLOW & KAZLOW
                                   Attorneys for Petitioner
                                   237 West 35th Street, 14th Floor
                                   New York, New York 10001
                                   Tel.: (212) 947-2900
                                   Fax: (212) 562-0629

To:     Creative Insurance Underwriters, Inc.
        Respondent
        2475 Aloma Avenue
        Winter Park, FL 32792

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Re: 13 195 02048 07
      Franklin Hamilton, LLC
      and
      Creative Insurance Underwriters Inc.

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the parties, and dated July 10, 2006, and having been duly sworn and the oral hearings having been waived in accordance with the Rules, and having fully reviewed and considered the written documents submitted to me by Claimant, and Respondent having failed to submit documents after due notice by mail in accordance with the Rules hereby, AWARD, as follows:

The sum of One-Hundred Thirty-Two Thousand Five-Hundred Dollars and Zero Cents ($132,500.00) is hereby awarded to the Claimant, together with interest at the New York statutory rate of 9% per annum from April 30, 2007.

Further, the Claimant is awarded the sum of $3,450.00, representing attorney's fees incurred by Claimant in this matter.

The administrative fees of the American Arbitration Association totaling $1,800.00, and the compensation of the arbitrator totaling $500.00 shall be borne by Respondent. Therefore, Respondent shall reimburse Claimant the sum of $2,300.00, representing that portion of said fees in excess of the apportioned costs previously incurred by Claimant.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

| 4/22/08 | |
| --- | --- |
| Date | Michael L. Dornbaum |

I, Michael L. Dornbaum, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

| 4/22/08 | |
| --- | --- |
| Date | Michael L. Dornbaum |



American Arbitration Association
*Dispute Resolution Services Worldwide*

## COMMERCIAL ARBITRATION RULES
### DEMAND FOR ARBITRATION

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐
There is no additional administrative fee for this service.

| | |
|---|---|
| Name of Respondent<br>Creative Insurance Underwriter s Inc. | Name of Representative (if known) |
| Address<br>2475 Aloma Avenue | Name of Firm (if applicable) |
| | Representative's Address |

| City<br>Winter Park | State<br>FL. | Zip Code<br>32792 | City | State | Zip Code |
|---|---|---|---|---|---|
| Phone No.<br>(407) 667-0023 | | Fax No.<br>(407) 875-5767 | Phone No. | | Fax No. |
| Email Address: | | | Email Address: | | |

The named claimant, a party to an arbitration agreement dated ___July 10, 2006___, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
Non-payment of contractual finder's fee.

| | |
|---|---|
| Dollar Amount of Claim $<br>at least 132,500.00 | Other Relief Sought: ☒Attorneys Fees  ☒Interest<br>☒Arbitration Costs  ☐Punitive/ Exemplary ☐Other ___ |

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $1,800.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Attorney familiar with mergers and aquisitions in the insurance industry

Hearing locale ___New York City___ (check one) ☐ Requested by Claimant  ☒ Locale provision included in the contract

| | |
|---|---|
| Estimated time needed for hearings overall:<br>_____ hours or ___1___ days | Type of Business: Claimant<br>Respondent ___Insurance brokers/agents___ |

Is this a dispute between a business and a consumer? ☐Yes ☒No  Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA  ☐ Dallas, TX  ☒ East Providence, RI ☐ Fresno, CA ☐ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| | |
|---|---|
| Signature (may be signed by a representative)  Date:<br>*Stuart L Sanders* September 24, 2007 | Name of Representative<br>Stuart L. Sanders |
| Name of Claimant<br>Franklin Hamilton, LLC | Name of Firm (if applicable)<br>Kazlow & Kazlow |
| Address (to be used in connection with this case)<br>700 Fairfield Avenue | Representative's Address<br>237 W. 35th Street, 14th Floor |

| City<br>Stamford | State<br>CT | Zip Code<br>06902 | City<br>New York | State<br>NY | Zip Code<br>10001 |
|---|---|---|---|---|---|
| Phone No.<br>(203) 353-8885 | | Fax No.<br>(203) 353-3380 | Phone No.<br>(212) 947-2900 | | Fax No.<br>(212) 563-0629 |
| Email Address: | | | Email Address:<br>ssanders@kazlowandkazlow.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879

AMERICAN ARBITRATION ASSOCIATION
------------------------------------------------------------x
FRANKLIN HAMILTON, LLC,

|                          |                          |
|--------------------------|--------------------------|
| Claimant,                | Claim No.                |
| -against-                | **STATEMENT OF CLAIM**   |

CREATIVE INSURANCE UNDERWRITERS,
INC.,

                              Respondent.
------------------------------------------------------------x

Claimant, Franklin Hamilton, LLC, by its attorneys, Kazlow & Kazlow, for its Statement

of Claim, alleges as follows:

## PARTIES

1. Claimant, Franklin Hamilton, LLC ("Franklin Hamilton"), is, and at all relevant times

was, a limited liability company organized and existing under the laws of the State of New York,

having its principal office and place of business at 700 Fairfield Avenue, Stamford, CT 06902.

2. Respondent, Creative Insurance Underwriters, Inc. ("Creative"), is, and at all relevant

times was, a corporation organized and existing under the laws of the State of Florida, having its

office and principal place of business at 2475 Aloma Avenue, Winter Park, FL 32792.

## THE AGREEMENT TO ARBITRATE

3. On or about July 10, 2006, Franklin Hamilton and Creative entered into a written

Seller Non-Exclusive No Up-Front Fee Agreement (the "Agreement") under which Creative

retained Franklin Hamilton as a consultant to help it find another company which would

purchase Creative or its assets (a copy of the Agreement is annexed as Exhibit "A"). Paragraph 7

of the Agreement specifies that, "For any dispute arising out of this Agreement, both parties

agree to use the American Arbitration Association, NYC office, for resolution, governed by the

laws of the State of New York."

## BACKGROUND FACTS

4. Franklin Hamilton is, and at all relevant times was, among other things, in the business of introducing companies to each other for the purposes of mergers or acquisitions.

5. Creative is, and at all relevant times was, among other things, a firm of insurance agents and brokers.

6. Prior to July 10, 2006, Franklin Hamilton and Creative began discussions concerning Creative's interest in finding another company to purchase Creative or its assets.

7. Pursuant to those discussions, Franklin Hamilton prepared the Agreement and submitted it to Creative.

8. John George, the President of Creative, signed the Agreement for Creative on or about July 10, 2006, and returned it to Franklin Hamilton.

9. John Chun, a General Partner of Franklin Hamilton, also signed the Agreement for Franklin Hamilton on or about July 10, 2006.

10. Under the introductory paragraph of the Agreement, Creative retained Franklin Hamilton and granted it, for a six-month term, "the non-exclusive right to actively seek a purchaser, raise debt, merger with a strategic partner or consummate a transaction" for Creative.

11. Paragraph 1 of the Agreement provides for Creative to pay Franklin Hamilton a finder's fee, as follows (with Franklin Hamilton being referred to as "FH" and Creative being referred to as "the Undersigned"):

> When FH introduces any entity or any party ("Company") to the Undersigned which completes a business transaction with the Undersigned including, without limitation, a transaction for the purchasing of any equity, asset or business of the

2

Undersigned or any of its subsidiaries or affiliates, a merger, joint venture or strategic alliance (a "Transaction"), the Undersigned agrees to pay FH a cash finder's fee at the closing equal to <u>5% of the first $10 million and 1% of the value thereafter of the Total Consideration or minimum of $125,000</u> whichever is greater. The "Total Consideration" is computed as the sum of all consideration paid, including but not limited to, down-payment, earn-out, non-cash consideration such as securities, goods, services, assumption, forgiveness of indebtedness, inventory, fixed assets, accounts receivable, non-compete, goodwill, consulting fees and any other valuable items exchanged.

12. Paragraph 1 of the Agreement further provides that:

FH will be entitled to its fee with respect to a Transaction consummated if within two (2) years after expiration of this Agreement or any extension, the Undersigned is sold, conveyed, exchanged or otherwise transferred Company with whom FH has made an introduction to Undersigned or Company who has signed FH's Confidentiality Agreement with respect to Undersigned or has received the Undersigned's executive summary through FH or Undersigned has signed FH's Confidentiality Agreement with respect to Company with the Company's name added to the Confidentiality Agreement by FH. Undersigned or his representative will include FH's fee information in any letter of intent, any definitive agreements and any purchase agreements. Undersigned agrees to submit signed instructions by Undersigned to his attorney or any third party escrow company within 5 days before final closing. Undersigned hereby irrevocably assigns to FH compensation from Undersigned's proceeds and authorize Company to deduct FH's compensation directly from Undersigned's gross proceeds and instruct Company to disburse those funds to FH at closing. Upon closing, Company will wire those funds to FH's account. Undersigned agrees to pay 6% late charge to FH if FH does not receive its fee within 3 days upon closing.

13. After July 10, 2006, and pursuant to the Agreement, Franklin Hamilton prepared an executive summary for Creative to distribute to companies interested in purchasing insurance brokerages like Creative or their assets.

14. On or about November 13, 2006, Franklin Hamilton entered into a Confidentiality Agreement with Appalachian Underwriters, Inc. ("Appalachian"), a company headquartered at 800 Oak Ridge Turnpike, Suite A-1000, Oak Ridge, TN 37830, with respect to Creative and two other companies.

15. Upon concluding the Confidentiality Agreement with Appalachian, Franklin

3

Hamilton sent Appalachian a copy of the executive summary which it had prepared for Creative.

16. On or about November 16, 2006, Creative indicated to Franklin Hamilton that it was interested in speaking to Appalachian about a possible acquisition. Franklin Hamilton therefore set up and hosted a conference call between Creative and Appalachian on the morning of Monday, November 20, 2006.

17. Later on or about November 20, 2006, Appalachian informed Franklin Hamilton that the conference call with Creative had gone very well. Similarly, on or about November 28, 2006, Creative informed Franklin Hamilton that it was very eager to move forward with Appalachian.

18. On or about December 7, 2006, Creative further informed Franklin Hamilton that Appalachian wanted to make it an offer, and to close a transaction as soon as possible.

19. Then, on or about December 14, 2006, Appalachian confirmed to Franklin Hamilton that it wanted to make an offer to enter into a transaction with Creative.

20. Thereafter, through January 2007, Franklin Hamilton, continued to communicated with both Creative and Appalachian to facilitate the transfer of information needed for Appalachian to formulate its offer to Creative.

21. On or about April 26, 2007, Appalachian informed Franklin Hamilton that it had closed a transaction with Creative.

22. On or about April 30, 2007, Creative confirmed to Franklin Hamilton that they had closed a transaction with Appalachian. Among other things, Creative informed Franklin Hamilton at that time, that it had received more than $400,000.00 from Appalachian, and that Creative's President, John George, had been retained by Appalachian to continue working for a period of at least one year.

4

23. Based on that information, Franklin Hamilton sent Creative an invoice in the amount of $125,000.00, it minimum finders fee under the Agreement, on April 30, 2007.  The invoice indicated that Creative's payment would be due on May 11, 2007.

24. However, Creative breached the Agreement by failing to pay Franklin Hamilton's fee, or any part thereof, by May 11, 2007, or at any time thereafter.

25. On or about May 16, 2007, Appalachian issued a press release on PR Newswire announcing that it had "completed the purchase of the renewal rights of Creative Insurance Underwriters brokerage business."  In its press release, Appalachian further stated that, "this acquisition has brought an additional 2,000 agency relationships to the table.  We also acquired a very complimentary carrier portfolio that will be a formidable offering to Florida Agents." by paragraph 1 of the Agreement, despite demands for payment by Franklin Hamilton.

## AS AND FOR A FIRST CLAIM FOR RELIEF

26. Franklin Hamilton repeats and realleges the statements in paragraphs 1 through 25, above, as if fully set forth herein.

27. The Agreement is a binding contract between Franklin Hamilton and Creative.

28. Franklin Hamilton performed all of its obligations under the Agreement which were conditions precedent to Creative's obligation to pay Franklin Hamilton a finders fee upon the sale of Creative's assets to Appalachian.

29. Creative is obligated to pay a finders fee to Franklin Hamilton under the Agreement because it sold assets, including the renewal rights of its brokerage business, to Appalachian, which was initially introduced to Creative by Franklin Hamilton.

30. Creative is also obligated to pay a finders fee to Franklin Hamilton under the

5

Agreement because it sold assets to Appalachian, which had signed a Confidentiality Agreement with Franklin Hamilton with respect to Creative.

31. Creative is further obligated to pay a finders fee to Franklin Hamilton under the Agreement because it sold assets to Appalachian, which received Creative's executive summary through Franklin Hamilton.

32. Moreover, Creative is obligated to pay a 6% late charge to Franklin Hamilton since it did not pay Franklin Hamilton its finders fee within three days of the closing of the transaction between Creative and Appalachian, as the Agreement required.

33. Creative breached its obligations under the Agreement by failing to pay Franklin Hamilton's finders fee, and by converting the portion of the gross proceeds of the sale that it irrevocably assigned to Franklin Hamilton in paragraph 1 of the Agreement.

34. Upon information and belief, Creative also breached its obligations under the Agreement by failing to include Franklin Hamilton's fee information in any letters of intent and purchase agreements that it signed with Appalachian.

35. Upon information and belief, Creative further breached its obligations under the Agreement by failing to instruct Appalachian to disburse Franklin Hamilton's finders fee directly to Franklin Hamilton from the gross proceeds of the sale at the time that the sale closed.

36. In addition, Creative breached its obligations under the Agreement by failing to pay Franklin Hamilton the 6% late charge established by paragraph 1 of the Agreement.

37. Franklin Hamilton has therefore been damaged by Creative in the amount of at least $132,500.00, with the exact amount of Franklin Hamilton's damages to be established upon the hearing of this claim, plus interest from May 11, 2007, and reasonable attorney's fees.

6

**WHEREFORE,** Claimant, Franklin Hamilton, LLC, respectfully requests an Award against Respondent, Creative Insurance Underwriters Inc.:

A. Under the First Claim for Relief, granting Franklin Hamilton, LLC, damages in the amount of at least $132,500.00, with the exact amount of Franklin Hamilton's damages to be established upon the hearing of this claim, plus interest from May 11, 2007, and reasonable attorney's fees;

B. Directing Creative Insurance Underwriters, Inc., to pay the various fees, costs and charges of this arbitration proceeding, and to reimburse Franklin Hamilton, LLC, for such portion of those fees, costs and charges as shall have been paid by Franklin Hamilton, LLC; and

C. Granting Franklin Hamilton, LLC, such other, further or different relief as the Arbitrator may deem to be just and proper.

Dated: New York, New York
September 24, 2007

Stuart L. Sanders
KAZLOW & KAZLOW
Attorneys for Claimant
237 West 35th Street, 14th Floor
New York, NY 10001
(212) 947-2900

7

Exhibit A

## Seller Non-Exclusive No Up-Front Fee Agreement
(This is a legally binding contract)

The ("Undersigned") on its own and on behalf of its Partners, Subsidiaries, Parent Companies and Related Entities, hereby retains and grants Franklin Hamilton, LLC., ("FH") the non-exclusive right to actively seek a purchaser, raise debt, merge with a strategic partner or consummate a transaction for the Undersigned. This Agreement is valid for six (6) months from the date of signing. Whereas, the Undersigned by its signature below, and whereas, FH is actively engaged in mergers, acquisitions and financial advisory services. It is agreed as follows:

1. **Fee Amount:** The Undersigned agrees to pay to FH the following fees, as compensation for services

| Initial Retainer | $0 |
|---|---|
| Finder's Fee On Selling, Merging, Joint Venture or Strategic Alliance | When FH introduces any entity or any party ("Company") to the Undersigned which completes a business transaction with the Undersigned including, without limitation, a transaction for the purchasing of any equity, asset or business of the Undersigned or any of its subsidiaries or affiliates, a merger, joint venture or strategic alliance (a "Transaction"), the Undersigned agrees to pay FH a cash finder's fee at the closing equal to 5% of the first $10 million and 1% of the value thereafter of the Total Consideration or minimum of $125,000 whichever is greater. The "Total Consideration" is computed as the sum of all consideration paid, including but not limited to, down-payment, earn-out, non-cash consideration such as securities, goods, services, assumption, forgiveness of indebtedness, inventory, fixed assets, accounts receivable, non-compete, goodwill, consulting fees and any other valuable items exchanged. |

FH will be entitled to its fee with respect to a Transaction consummated if within two (2) years after expiration of this Agreement or any extension, the Undersigned is sold, conveyed, exchanged or otherwise transferred Company with whom FH has made an introduction to Undersigned or Company who has signed FH's Confidentiality Agreement with respect to Undersigned or has received the Undersigned's executive summary through FH or Undersigned has signed FH's Confidentiality Agreement with respect to Company with the Company's name added to the Confidentiality Agreement by FH. Undersigned or its representative will include FH's fee information in any letter of intent, definitive agreements and purchase agreements. Undersigned agrees to submit signed instructions by Undersigned to his attorney or any third party escrow company within 5 days before final closing. Undersigned hereby irrevocably assigns to FH compensation from Undersigned's proceeds and authorize Company to deduct FH's compensation directly from Undersigned's gross proceeds and instruct Company to disburse those funds to FH at closing. Upon closing, Company will wire those funds to FH's account. Undersigned agrees to pay 6% late charge to FH if FH does not receive its fee within 3 days upon closing.

2. **Terms of sale:** Purchase price and terms: To be negotiated between the Undersigned and Company

3. **Status as Independent Contractor:** FH shall perform its services as an independent contractor and not as an employee of the Undersigned. FH has no authority to bind the Undersigned unless granted such authority in writing from the Undersigned.

4. **Indemnity:** The Undersigned agrees to indemnify and hold harmless FH, its directors, officers, agents and employees against any and all loss, liability, claims, damage and expense whatsoever (including but not limited to any and all legal or other expenses incurred in investigating, preparing or defending against any litigation, or any claims whatsoever commenced or threatened, whether arising out of any action between FH and the Undersigned or between FH and any third party or otherwise). The Undersigned acknowledges FH will use and rely on data, material and other information furnished to it by the Undersigned and Company, without independently verifying the accuracy, completeness or veracity of it. FH makes no representations as to the completeness or accuracy of any of the information. Undersigned agrees that FH is not responsible for any information given to the Undersigned or Company for any omissions or errors of information. FH will use its best efforts, but makes no guarantee, that a transaction, as proposed, will be consummated.

5. **Confidentiality Agreements:** FH agrees to obtain the Confidentiality Agreement from Company on behalf of Undersigned unless Undersigned approves the release of his information by signing the Confidentiality Agreement for the Company. Undersigned agrees to provide necessary financial data to FH promptly upon signing this Agreement.

6. **Other conditions:** _____

7. **Arbitration:** For any dispute arising out of this Agreement, both parties agree to use the American Arbitration Association, NYC office, for resolution, governed by the laws of the State of New York. In any action, proceeding, or arbitration, the prevailing party shall be entitled to reasonable attorney's fees and costs. If any provision of this Agreement is prohibited or unenforceable, the remaining provisions hereof shall be enforceable to the maximum extent permitted by law.

8. The parties deem signed facsimile copies of this Agreement acceptable. Each person signing this Agreement represents and warrants that the entity for which he or she is signing has duly authorized this Agreement and has the authority to sign on behalf of such entity. The Undersigned accepts this understanding, countersigns and faxes the copy of this Agreement to FH

**Accepted by Undersigned:**

Undersigned Name: JOHN GEORGE AS PRESIDENT OF CREATIVE INS UNDERWRI

Undersigned Address: 2475 AROMA AVE City WINTER PARK ST FL Zip 32792

Print Name: JOHN GEORGE   By _____   Title President   Date 7/10/06

Print Name: _____   By _____   Title _____   Date _____

FH John Chun   By _____   Title Partner   Date 7/10/2006

AMERICAN ARBITRATION ASSOCIATION
-----------------------------------------------------------x
FRANKLIN HAMILTON, LLC,

                        Claimant,              Claim No.

            -against-                          **AFFIDAVIT OF SERVICE**
                                               **BY CERTIFIED MAIL**
CREATIVE INSURANCE UNDERWRITERS,
INC.,

                        Respondent.
-----------------------------------------------------------x

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK)

    **MICHAEL S. CRAWFORD,** being duly sworn, deposes and says:

    I am not a party to the action, am over 18 years of age, and reside in the County of

Queens, New York.  On September 24, 2007, I served a true copy of the Demand for Arbitration

and Statement of Claim in the above-captioned matter, on the Respondent, Creative Insurance

Underwriters, Inc., by mailing it, enclosed in a sealed envelope, with the postage for first-class

certified mail, return receipt requested, prepaid thereon (Cert. Mail # 7006 2150 0000 3055

2952), in a post office or official depository of the United States Postal Service located in the

State of New York, addressed as follows:

Creative Insurance Underwriters, Inc.
2475 Aloma Avenue
Winter Park, FL 32792
Attn: Mr. John George

                                            MICHAEL S. CRAWFORD

Sworn to before me on the
24th day of September, 2007

Notary Public

KENNETH J. NOTTO
Notary Public, State of New York
No. 01NO6016892
Qualified in Nassau County
Commission Expires November 30, 20 10

AMERICAN ARBITRATION ASSOCIATION
-------------------------------------------------------------x
FRANKLIN HAMILTON, LLC,

                             Claimant,          Claim No.  13 195 02048 07

            -against-                  **AFFIDAVIT**

CREATIVE INSURANCE UNDERWRITERS,
INC.,

                           Respondent.
-------------------------------------------------------------x

STATE OF CONNECTICUT)
                      )ss.:
COUNTY OF FAIRFIELD   )

      **JOHN CHUN**, being duly sworn, deposes and says:

      1. I am a managing member of Franklin Hamilton, LLC ("Franklin Hamilton"), the Claimant in this arbitration.  As such, I am familiar with the facts of this matter, and submit this affidavit as proof of Claimant's claim against the Respondent, Creative Insurance Underwriters, Inc. ("Creative").  I base the factual statements set forth below on my personal knowledge of the transactions between the parties, and upon information contained in the file of this matter maintained by Franklin Hamilton, LLC, which I believe to be true and accurate.

      2. Franklin Hamilton is a New York limited liability company which maintains, and at all relevant times maintained its principal office and place of business at 700 Fairfield Avenue, Stamford, Connecticut.  Franklin Hamilton is in the business of introducing companies in the insurance brokerage industry for the purpose of mergers or acquisitions.  Franklin Hamilton charges its customers a finders fee for that service.

      3. Creative is a Florida corporation which, at all relevant times, maintained its principal office and place of business at 2475 Aloma Avenue, Winter Park, Florida (a copy of the public

record information concerning Creative that is available over the Florida Department of State, Division of Corporations' Internet web site is annexed as Exhibit "A"). When Franklin Hamilton became acquainted with Creative, prior to July 10, 2006, Creative was in business as a firm of insurance agents and brokers.

4. Creative's President, John George, indicated to us at that time that he was interested in obtaining Franklin Hamilton's assistance in locating a purchaser for Creative or its assets. Therefore, on July 10, 2006, Mr. George and I signed Franklin Hamilton's standard "Seller Non-Exclusive No Up-Front Fee Agreement" (the "Agreement," a copy of which is annexed as Exhibit "B").

5. Under the introductory paragraph of the Agreement, Creative retained Franklin Hamilton, and granted it, for a six-month term, "the non-exclusive right to actively seek a purchaser, raise debt, merger with a strategic partner or consummate a transaction" for Creative.

6. Paragraph 1 of the Agreement provided for Creative to pay Franklin Hamilton a finder's fee, as follows (with Franklin Hamilton being referred to as "FH" and Creative being referred to as "the Undersigned" in the language of the Agreement):

> When FH introduces any entity or any party ("Company") to the Undersigned which completes a business transaction with the Undersigned including, without limitation, a transaction for the purchasing of any equity, asset or business of the Undersigned or any of its subsidiaries or affiliates, a merger, joint venture or strategic alliance (a "Transaction"), the Undersigned agrees to pay FH a cash finder's fee at the closing equal to 5% of the first $10 million and 1% of the value thereafter of the Total Consideration or minimum of $125,000 whichever is greater. The "Total Consideration" is computed as the sum of all consideration paid, including but not limited to, down-payment, earn-out, non-cash consideration such as securities, goods, services, assumption, forgiveness of indebtedness, inventory, fixed assets, accounts receivable, non-compete, goodwill, consulting fees and any other valuable items exchanged.

7. Paragraph 1 of the Agreement further provided that:

FH will be entitled to its fee with respect to a Transaction consummated if within two (2) years after expiration of this Agreement or any extension, the Undersigned is sold, conveyed, exchanged or otherwise transferred Company with whom FH has made an introduction to Undersigned or Company who has signed FH's Confidentiality Agreement with respect to Undersigned or has received the Undersigned's executive summary through FH or Undersigned has signed FH's Confidentiality Agreement with respect to Company with the Company's name added to the Confidentiality Agreement by FH. Undersigned or his representative will include FH's fee information in any letter of intent, any definitive agreements and any purchase agreements. Undersigned agrees to submit signed instructions by Undersigned to his attorney or any third party escrow company within 5 days before final closing. Undersigned hereby irrevocably assigns to FH compensation from Undersigned's proceeds and authorize Company to deduct FH's compensation directly from Undersigned's gross proceeds and instruct Company to disburse those funds to FH at closing. Upon closing, Company will wire those funds to FH's account. Undersigned agrees to pay 6% late charge to FH if FH does not receive its fee within 3 days upon closing.

8. After July 10, 2006, and pursuant to the Agreement, Franklin Hamilton prepared an executive summary for Creative to distribute to companies interested in purchasing insurance brokerages like Creative or their assets (a copy of the executive summary for Creative is annexed as Exhibit "C").

9. On November 13, 2006, which was within Franklin Hamilton's six-month exclusive period, Franklin Hamilton entered into a Confidentiality Agreement with Appalachian Underwriters, Inc. ("Appalachian"), a company headquartered at 800 Oak Ridge Turnpike, Suite A-1000, Oak Ridge, TN 37830, with respect to Creative and two other insurance agencies (a copy of the Confidentiality Agreement is annexed as Exhibit "D").

10. The next day, November 14, 2006, Trey Marinello of Franklin Hamilton sent an e-mail to Robert Arowood, the President of Appalachian, attaching copies of the executive summaries of Creative and the other two agencies listed in the Confidentiality Agreement (a copy of the e-mail is annexed as Exhibit "E").

11. Three days later, on November 16, 2006, Mr. George told Scott Webb of Franklin

Hamilton that he was interested in speaking to Appalachian about a possible merger or acquisition (I base this statement, and the following statements concerning conversations in which employees of Franklin Hamilton participated, upon contemporaneous entries in Franklin Hamilton's computer log which those employees made). Scott therefore set up a conference call for 11:00 a.m., on the morning of Monday, November 20, 2006, so that he could introduce Mr. George to Mr. Arowood.

12. The conference call took place as scheduled. Later on November 20, 2006, Mr. Arowood told Christopher Metzler of Franklin Hamilton, that he thought that the conference call with Creative had gone very well, and discussed the outlines of a possible deal, which would include retaining the services of Mr. George for a period of time after the closing.

13. On November 28, 2006, Mr. George told Scott Webb that he was also very eager to move forward with Appalachian.

14. On December 7, 2006, Mr. George mentioned to Kieran Pinney of Franklin Hamilton, that Appalachian had been calling him to make an offer, and that it had indicated that it wanted to close a transaction as soon as possible.

15. Then, on December 14, 2006, Garland Byrd of Appalachian confirmed to Trey Marinello of Franklin Hamilton that Appalachian wanted to make an offer to Creative, and needed to know if Creative was serious about being acquired by Appalachian.

16. Thereafter, through the end of January 2007, Christoper Metzler and Kieran Pinney of Franklin Hamilton, continued to communicate with both Creative and Appalachian to facilitate the transfer of information needed for Appalachian to formulate its offer to Creative.

17. On April 26, 2007, Mr. Arowood told Kieran Pinney that Appalachian had completed

4

a deal with Creative.

18. On April 30, 2007, Kieran called Mr. George and told him what Mr. Arowood had said. Mr. George then confirmed that a deal had been made, although he was unhappy about the price that he had received, which was about $400,000.00. Mr. George also indicated that Appalachian had retained him to work continue working for the company for at least one year.

19. Later on April 30, 2007, and based on his conversation with Mr. George, Keiran sent Mr. George an invoice for Franklin Hamilton's minimum finder's fee under the Agreement, i.e. $125,000.00, by e-mail (copies of the e-mail and invoice are annexed as Exhibit "F"). The invoice indicated that Creative's payment would be due on May 11, 2007.

20. However, Creative breached the Agreement by failing to pay Franklin Hamilton's fee, or any part thereof, by May 11, 2007, or at any time thereafter.

21. On or about May 16, 2007, Appalachian issued a press release on PR Newswire announcing that it had "completed the purchase of the renewal rights of Creative Insurance Underwriters brokerage business" (a copy of the press release is annexed as Exhibit "G"). Appalachian further stated that, "this acquisition has brought an additional 2,000 agency relationships to the table. We also acquired a very complimentary carrier portfolio that will be a formidable offering to Florida Agents."

22. Creative is contractually obligated to pay Franklin Hamilton its minimum finder's fee because it sold its assets, including the renewal rights of its brokerage business, to Appalachian, which was initially introduced to Creative by Franklin Hamilton.

23. Franklin Hamilton performed all of its obligations under the Agreement, in that, within Franklin Hamilton's six-month exclusive period, Franklin Hamilton signed a

Confidentiality Agreement with Appalachian with respect to Creative, sent Appalachian a copy of the executive summary which it had prepared concerning Creative, and put Creative and Appalachian in direct communication with each other by hosting an introductory conference call.

24. Franklin Hamilton was therefore to the payment of its $125,000.00 minimum fee upon the closing of the sale by Creative to Appalachian, which occurred prior to the conversation between Keiran Pinney and Mr. George on April 30, 2007 (or, at the very least, prior to Appalachian's press release of May 16, 2007), and less than two years after the end of Franklin Hamilton's six-month exclusive period. Since payment of that fee was not made as required by the Agreement, and more than three days have passed, Franklin Hamilton is also entitled to the recover the 6% late charge specified in the Agreement, which comes to $7,500.00 (6% of $125,000.00).

25. Franklin Hamilton therefore respectfully requests an award of $132,500.00 against Creative, plus interest from May 11, 2007, reasonable attorney's fees and costs (see paragraph 7 of the Agreement)(I am informed by counsel that, since paragraph 7 of the Agreement provides for the application of New York law, the applicable pre-award interest rate is 9% per annum pursuant to Sections 5001 and 5004 of the New York Civil Practice Law and Rules).

_____
John Chun

Sworn to before me this
_____ day of February, 2008

_____
Notary Public

MARJORIE B. CION
NOTARY PUBLIC
MY COMMISSION EXPIRES 9/30/2012

6

AMERICAN ARBITRATION ASSOCIATION
------------------------------------------------------------x
FRANKLIN HAMILTON, LLC,

                              Claimant,              Claim No.  13 195 02048 07

          -against-                                  **AFFIDAVIT**

CREATIVE INSURANCE UNDERWRITERS,
INC.,

                              Respondent.
------------------------------------------------------------x

STATE OF CONNECTICUT)
                                    )ss.:
COUNTY OF FAIRFIELD   )

   **KIERAN PINNEY,** being duly sworn, deposes and says:

   1. I am an account executive employed by Franklin Hamilton, LLC ("Franklin

Hamilton"), the Claimant in this arbitration.  My job includes communicating with clients of

Franklin Hamilton, as well as with companies seeking to merge with or acquire those clients, in

order to facilitate their transactions.

   2. On December 7, 2006, I spoke with John George of Creative Insurance Underwriters,

Inc. ("Creative"), who told me that he had been receiving calls from Appalachian Underwriters,

Inc. ("Appalachian"), which had been introduced to Creative in November 2006 by Scott Webb

of Franklin Hamilton.  Mr. George told me that Appalachian wanted to make him an offer to

purchase Creative or its assets, and that it had indicated that it wanted to close such a transaction

as soon as possible.

   3. I had several additional telephone calls with Mr. George in January 2007 since Scott

had left Franklin Hamilton's employ, and Appalachian still needed to receive information

concerning Creative in order to make a finalize a deal.  However, our communications were

sporadic after that.

4. On April 26, 2007, Robert Arowood of Appalachian told me that Appalachian had completed a deal with Creative.

5. On April 30, 2007, I called Mr. George and told him what Mr. Arowood had said. Mr. George told me a deal had indeed been made, although he was unhappy about the price that he had received, which was about $400,000.00. Mr. George also said that Appalachian had retained him to continue working for the company for at least one year.

6. Based on that conversation, I sent Mr. George an e-mail later in the afternoon of April 30, 2007, to which an invoice for Franklin Hamilton's minimum finder's fee, i.e. $125,000.00, was attached (copies of the e-mail and invoice are annexed as Exhibit "F").

7. The invoice indicated that Creative's payment would be due on May 11, 2007, but Creative failed to meet that due date, and has not paid Franklin Hamilton's fee to this date.

_____
Kieran Pinney

Sworn to before me this
_____ day of February, 2008

_____
Notary Public

MARJORIE B. CION
NOTARY PUBLIC
COMMISSION EXPIRES 9/30/2012

2

Exhibit A

# 2007 FOR PROFIT CORPORATION ANNUAL REPORT

**DOCUMENT# H61079**

FILED
May 03, 2007
**Secretary of State**

**Entity Name:** CREATIVE INSURANCE UNDERWRITERS, INC.

| | |
|---|---|
| **Current Principal Place of Business:** | **New Principal Place of Business:** |
| 2475 ALOMA AVE<br>WINTER PARK, FL 32792    US | |
| **Current Mailing Address:** | **New Mailing Address:** |
| P O BOX 5900<br>WINTER PARK, FL 32793    US | |

FEI Number: 59-2548714      FEI Number Applied For ( )      FEI Number Not Applicable ( )      Certificate of Status Desired ( )

| **Name and Address of Current Registered Agent:** | **Name and Address of New Registered Agent:** |
|---|---|
| FELDMAN, EVAN M<br>5975 SUNSET DRIVE, SUITE 604<br>SOUTH MIAMI, FL  33143    US | FELDMAN, EVAN M<br>5975 SUNSET DRIVE<br>SUITE 601<br>SOUTH MIAMI, FL  33143  US |

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE:    EVAN M. FELDMAN                                                05/03/2007

_Electronic Signature of Registered Agent_                                   Date

**Election Campaign Financing Trust Fund Contribution ( ).**

| **OFFICERS AND DIRECTORS:** | **ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:** |
|---|---|
| Title:       P        ( ) Delete<br>Name:      GEORGE, JOHN,<br>Address:   2475 ALOMA AVE.<br>City-St-Zip:   WINTER PARK, FL 32792 | Title:       P,S,       (X) Change ( ) Addition<br>Name:      GEORGE, JOHN,<br>Address:   2475 ALOMA AVE.<br>City-St-Zip:   WINTER PARK, FL 32792 |
| Title:       S        (X) Delete<br>Name:      JASKOWIAK, JENNIFER<br>Address:   2475 ALOMA AVE.<br>City-St-Zip:   WINTER PARK, FL 32792 | Title:                    ( ) Change  ( ) Addition<br>Name:<br>Address:<br>City-St-Zip: |

I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:    JOHN GEORGE, JR                            P                05/03/2007

_Electronic Signature of Signing Officer or Director_                                   Date

Exhibit B

# Seller Non-Exclusive No Up-Front Fee Agreement
### (This is a legally binding contract)

The ("Undersigned") on its own and behalf of its Partners, Subsidiaries, Parent Companies and Related Entities, hereby retains and grants Franklin Hamilton, LLC., ("FH"), the non-exclusive right to actively seek a purchaser, raise debt, merge with a strategic partner or consummate a transaction for the Undersigned. This Agreement is valid for six (6) months from the date of signing. Whereas, the Undersigned by its signature below, and whereas, FH is actively engaged in mergers, acquisitions and financial advisory services. It is agreed as follows:

1.  **Fee Amount:** The Undersigned agrees to pay to FH the following fees, as compensation for services

| | |
|---|---|
| Initial Retainer | $0 |
| Finder's Fee On Selling, Merging, Joint Venture or Strategic Alliance | When FH introduces any entity or any party ("Company") to the Undersigned which completes a business transaction with the Undersigned including, without limitation, a transaction for the purchasing of any equity, asset or business of the Undersigned or any of its subsidiaries or affiliates, a merger, joint venture or strategic alliance (a "Transaction"), the Undersigned agrees to pay FH a cash finder's fee at the closing equal to 5% of the first $10 million and 1% of the value thereafter of the Total Consideration or minimum of $125,000 whichever is greater. The "Total Consideration" is computed as the sum of all consideration paid, including but not limited to, down-payment, earn-out, non-cash consideration such as securities, goods, services, assumption, forgiveness of indebtedness, inventory, fixed assets, accounts receivable, non-compete, goodwill, consulting fees and any other valuable items exchanged. |

FH will be entitled to its fee with respect to a Transaction consummated if within two (2) years after expiration of this Agreement or any extension, the Undersigned is sold, conveyed, exchanged or otherwise transferred Company with whom FH has made an introduction to Undersigned or Company who has signed FH's Confidentiality Agreement with respect to Undersigned or has received the Undersigned's executive summary through FH if Undersigned has signed FH's Confidentiality Agreement with respect to Company with the Company's name added to the Confidentiality Agreement by FH. Undersigned or his representative will include FH's fee information in any letter of intent, definitive agreements and purchase agreements. Undersigned agrees to submit signed instructions by Undersigned to his attorney or any third party escrow company within 5 days before final closing. Undersigned hereby irrevocably assigns to FH compensation from Undersigned's gross proceeds and authorize Company to disburse FH's compensation directly from Undersigned's gross proceeds and instruct Company to disburse those funds to FH at closing. Upon closing, Company will wire those funds to FH's account. Undersigned agrees to pay 6% late charge to FH if FH does not receive its fee within 5 days upon closing.

2.  **Terms of sale:** Purchase price and terms: To be negotiated between the Undersigned and Company

3.  **Status as Independent Contractor:** FH shall perform its services as an independent contractor and not as an employee of the Undersigned. FH has no authority to bind the Undersigned unless granted such authority in writing from the Undersigned.

4.  **Indemnity:** The Undersigned agrees to indemnify and hold harmless FH, its directors, officers, agents and employees against any and all loss, liability, claims, damage and expense whatsoever (including but not limited to any and all legal or other expenses incurred in investigating, preparing or defending against any litigation, or any claims whatsoever commenced or threatened, whether arising out of any action between FH and the Undersigned or between FH and any third party or otherwise). The Undersigned acknowledges FH will use and rely on data, material and other information furnished to it by the Undersigned and Company, without independently verifying the accuracy, completeness or veracity of it. FH makes no representations as to the completeness or accuracy of any of the information. Undersigned agrees that FH is not responsible for any information given to the Undersigned or Company for any omissions or errors of information. FH will use its best efforts, but makes no guarantee, that a transaction, as proposed, will be consummated.

5.  **Confidentiality Agreements:** FH agrees to obtain the Confidentiality Agreement from Company on behalf of Undersigned unless Undersigned approves the release of his information by signing the Confidentiality Agreement for the Company. Undersigned agrees to provide necessary financial data to FH promptly upon signing this Agreement.

6.  **Other conditions:** _____

7.  **Arbitration:** For any dispute arising out of this Agreement, both parties agree to use the American Arbitration Association, NYC office, for resolution, governed by the laws of the State of New York. In any action, proceeding, or arbitration, the prevailing party shall be entitled to reasonable attorney's fees and costs. If any provision of this Agreement is prohibited or unenforceable, the remaining provisions hereof shall be enforceable to the maximum extent permitted by law

8.  The parties deem signed facsimile copies of this Agreement acceptable. Each person signing this Agreement represents and warrants that the entity for which he or she is signing has duly authorized this Agreement and has the authority to sign on behalf of such entity. The Undersigned accepts this understanding, countersigns and faxes the copy of this Agreement to FH

**Accepted by Undersigned:**
Undersigned Name ___JOHN GEORGE___  AS  PRESIDENT  OF  CREATIVE  INS  UNDERWR.I
Undersigned Address 2675  ALOMA  AVE  City WINTER PARK  ST FL  Zip 32792
Print Name JOHN GEORGE  By _____ _____ Title PRESIDENT  Date 7/30/06
Print Name _____  By _____ the Undersign Title _____  Date _____

FH _____

_John Chun_  By _____  Title Partner  Date 7/10/2006

Exhibit C

Creative Insurance Underwriters Inc.

P O Box 5900
Winter Park, FL 32793

# Creative Insurance Underwriters Inc.

FH ID: 372490

## Section One:

**Company Profile:** Creative Insurance Underwriters staff has more than 100 years of underwriting experience in Property, General Liability and Auto Lines in both standard and non-standard markets.

| | |
|---|---|
| Website | www.creativeins.com |
| Year Established | 1985 |
| Licensed In | FL |

| Staff | |
|---|---|
| Total | 9 |
| Management | 1 |
| Underwriters | 5 |
| Marketing | 1 |
| Administrative | 4 |

**Locations**

| | City | State | Square Feet | Revenue from this Location | Own/Lease |
|---|---|---|---|---|---|
| Headquarters | Winter Park | FL | 7200 | 100% | Own |

**Revenues**

| YTD (approx.) | 2005 | 2004 | 2003 |
|---|---|---|---|
| $600,000 | $1,250,000 | $1,000,000 | |

## Section Two:

**Line of Business:**

| 2005 | 2004 | 2003 |
|---|---|---|
| 100% | 100% | 100% |

MGA

**Typical Customers:**

| 1. Contractors | 8. Light & Heavy Distributors |
|---|---|
| 2. Packages | 9. Light & Heavy Manufacturers |
| 3. BOP | 10. Homeowners |
| 4. Misc. Professional Liability | 11. General Liability |
| 5. Commercial Auto | 12. Restaurants / Bars |
| 6. Garage Program/Auto Dealers | 13. Lessor's Risk |
| 7. Hotel / Motel / Apartment | 14. Healthcare Services |

**Large Commercial Accounts Most Recent 12 Months**

| Number of Accounts that Generate: | Total Amount Premium for these Accounts | Avg. Number of years Account has been with firm |
|---|---|---|
| 40,000 - 50,000 in Premium | | |
| 25,000 - 50,000 in Premium | | |
| 50,000 - 100,000 in Premium | | |
| 100,000 - 250,000 in Premium | | |
| 250,000 - 500,000 in Premium | | |
| 500,000 or Greater | | |

**Average Account Size**

| Restaurants/Bars: | $4,000-5,000 |
|---|---|
| Contractors: | $1,500-1,000 |
| Commercial auto: | $1,500-1,000 |

## Section Three:

| | |
|---|---|
| Fiscal Year Dates | Jan-Dec |
| Incorporated as | S-corporation |
| Ownership Structure | John George: 100% |
| Management System | Proprietary management system |

**2005 Reconstructed EBITDA Calculations**

| | |
|---|---|
| Net Income Before Tax | |
| Owners Excess Salaries | |
| Depreciation | |
| Owners Life Insurance | |
| Interest Expense | |
| Entertain, Travel & Meals | |
| Accounting & Legal Fees | |
| Non-Recurring Costs | |
| Owners Auto Expense | |
| Charitable Contributions | |
| **Total Recasted EBITDA** | **TBD** |

# Creative Insurance Underwriters Inc

**FH ID: 372490**

## Section Four:

| Producer Name/Title | % Ownership | Age | Years with Agency | Written Agreement Non-Solicitation | New Business Commission % | Renewal Business Commission % | Other Compensation | Total Pay |
|---|---|---|---|---|---|---|---|---|
| John George — President | 100% | 52 | 20 | N/A | N/A | N/A | | |

| Other Staff Compensation | Salary Based |
|---|---|
| Additional Expenses Paid by Agency | The marketing employee receives a car and cell phone |

## Section Five: Carriers

| Major Carriers (Top 3 by approx. NWP) | | Historical Staff Breakdown | 2005 | 2004 | Carriers Compensation/Profit Sharing Loss Ratio | | Health Benefit program? | |
|---|---|---|---|---|---|---|---|---|
| North Pointe Insurance Company | | Management | 1 | 1 | Agency Network | 20-30% | Health | |
| Mepco Insurance of Florida | | Underwriting dept | 5 | 5 | | | Disability | |
| Hamingo Insurance | | Marketing | 1 | 1 | | | Dental | No |
| | | Administrative | 4 | 5 | Marketing Strategy | | Primary Focus: | |
| | | Total | 9 | 12 | | | - Commercial Auto | |
| 2005 Volume (NWP) | | | 2005 | 2004 | | | - Restaurants | |
| | | | TBD | | | | - Contractors | |
| Mepco Insurance of Florida | $2,500,000 | | | | | | | |
| North Pointe Insurance Company | $1,700,000 | | | | | | | |
| Hamingo Insurance | TBD | | | | | | | |

| Seller's Expectations | | | |
|---|---|---|---|
| Purchase Price Multiple | Minimum Down Payment | Payout Period | Reason for Selling |
| 6X EBITDA | 35-45% | 2-5 years | 1. Looking for access to more markets. They currently have excellent loss ratios but are having difficulty securing additional markets. |
| | | | 2. The market in FL is tough |
| | | | 3. Help accelerate growth |

## Section Six:

**Competitive Advantage:**

1. Admitted markets
2. Better markets
3. Expert staff and expertise.
4. Good strong niches

## ACKNOWLEDGED AND AGREED UPON:

Undersigned Company Name: Creative Insurance Underwriters Inc.

Undersigned Address: 2425 Maria    City Winter Park Fl. zip 32792

Print Name: John George    By [signature]    Title President    Date 10/17/06

Print Name: _____    By _____    Title _____    Date _____

# Seller(s) and Franklin Hamilton Statements

## Recasted EBITDA and financial projection explanation

The reconstructed financial statements represent the adjusted owner's historical P & L statements which reflects the way a buyer runs the business if it was a public and debt free company. In addition, when analyzing historical financial statements, it's important to eliminate income and expense items that may have arisen as a result of extraordinary or non-recurring conditions. Accounting standards define extraordinary events or transactions as the following: The underlying event or transaction must be unusual; that is, it must have a high degree of abnormality.

## Owner's statement on the executive summary

We intend to state that the reconstructed EBITDA, the forward-looking statements, all statements regarding our expected financial position and operating results, our business strategy and the outcome of any contingencies are forward-looking words such as "may," "believe," "plan," "will," "anticipate," "estimate," "expect," "intend" and other phrases of similar meaning, known and unknown risks, uncertainties and other factors could cause the actual results to differ materially from those contemplated by the statements. The forward-looking information is based on various factors and was derived using numerous assumptions.

Although we believe that our expectations that are expressed in the executive summary are reasonable, we cannot promise that our expectations will turn out to be correct. The actual results could be materially different from our expectations, including the following:

- We may lose subscribers or fail to grow our customer bases;
- We may not be able to sustain our current growth;
- We may fail to compete with existing and new competitors;
- We may not adequately respond to technological developments impacting the internet and the technology industry.

This list is intended to identify some of the principal factors that could cause actual results to differ materially from those described in this executive summary. These factors are not intended to represent a complete list of all risks and uncertainties inherent in our business. A buyer should perform its own analysis and due diligence without relying on statements or omissions made by us.

## Franklin Hamilton Information Sources

The information in this summary has been obtained from interviewing the owners and / or partners of the above named company. Franklin Hamilton has not conducted any due diligence. Franklin Hamilton makes no representations as to the completeness or accuracy of any of the information, and a potential buyer agrees that Franklin Hamilton is not responsible for any information given to it relative to the Company or for omissions of any information. The buyer will perform its own analysis and investigation without relying on statements or omissions made by Franklin Hamilton Company. The buyer agrees to hold Franklin Hamilton and its associates harmless and will indemnify Franklin Hamilton from any damage and costs resulting from any breach of this agreement by the buyer, its staff or its clients. Such costs and damages shall include but not be limited to any legal costs of enforcing this agreement

Exhibit D

# Confidentiality Agreement
### (Page 1 of 2)

The Undersigned by its signature below acknowledges on behalf of its employees, associates, partners and related entities the confidential nature of the material being shared with it by Franklin Hamilton ("FH") regarding transactions, or potential transactions (the "Evaluation Material") with the company or companies (the "Company") introduced to it by FH.

The Undersigned agrees not to circulate the Evaluation Material other than to its employees, associates, partners and related entities without the prior written consent of FH and only after any such employees, associates, partners or related entities are made aware of the provisions of this Agreement. The identity of the Company shall be provided upon signing this Agreement.

1. The Undersigned further agrees that it:

    (a) will keep strictly confidential any general, market, competitive or financial information it may receive in the course of evaluating a transaction or potential transaction with the Company, other than publicly available information;

    (b) will not disclose the name of the Company to any other party without full disclosure to, and written permission from FH and Company;

    (c) will not disclose to anyone in any way that conversations regarding a potential transaction involving the Company have occurred;

    (d) will not to initiate or maintain contact with any officer, director, employee or agent of the Company with respect to any transaction or any of the matters referred to herein, except with the express permission of FH;

    (e) agrees to work exclusively through FH, and submit all questions, informational requests and offers through FH and its designated representatives in connection with any transaction. The Undersigned will not attempt to interfere in any way with the Company;

    (f) will not employ or solicit to employ, any current employee of the Company without obtaining prior written consent of the Company.

2. Upon the termination of any relationship between the Company and the Undersigned, the Undersigned, upon the request of the Company or FH, will return to the Company all Evaluation Material and copies thereof.

3. The obligations of the Undersigned under this Agreement shall survive the termination of any relationship between the Company, the Undersigned and FH.

4. This Agreement may not be assigned without the prior written approval of the Company and FH, which may be arbitrarily withheld.

5. The foregoing restrictions with respect to Evaluation Material furnished to the Undersigned shall not apply to any Evaluation Material which the Undersigned demonstrates, to the sole satisfaction of FH and Company, (1) that is or becomes generally available to the public other than as a result of disclosure by the Undersigned or Undersigned's employees, associates, agents or partners, (2) or is available to the Undersigned on a non-confidential basis prior to disclosure to the Undersigned by the FH or the Company, (3) or is required to be disclosed by the United States securities laws.

6. FH makes no representations as to the completeness or accuracy of any of the Evaluation Material, and the Undersigned agrees that FH is not responsible for any information or omissions of information given to it relative to the Company. The Undersigned will perform its own analysis and investigation without

(Page 2 of 2)

relying on statements or omissions of FH. The Undersigned agrees to hold FH and its associates harmless and indemnifies FH from any damages and costs resulting from any breach or alleged breach of this Agreement by the Undersigned, its employees, associates, partners and related entities. Such costs and damages shall include but not be limited to any legal costs of enforcing this Agreement.

7. The Undersigned acknowledges that a breach by the Undersigned of any of the provisions of this Agreement would cause irreparable harm to the Company and FH for which it could not be adequately compensated with money damages. Accordingly, in the event of any such breach, the Undersigned agrees that the Company and FH, in addition to all other remedies available at law, shall be entitled to temporary and permanent injunctive relief and specific performance of the provisions hereof without the necessity of proving actual damage or posting a bond or other security.

8. This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Signed facsimile copies of this Agreement are deemed acceptable by the parties to the Agreement. If any provision of this Agreement is prohibited or unenforceable, the remaining provisions hereof shall be enforceable to the maximum extent permitted by law.

9. Each person signing this agreement represents and warrants that the entity for which it is signing has duly authorized this agreement and he has the authority to sign on behalf of such entity.

ACKNOWLEDGED AND AGREED UPON:

Undersigned Company Name _Appalachian Underwriters_

Undersigned Address _P.O. Box 1017_  City _Clinton_ ST _TN_ Zip _37716_

Print Name _Bob Arnold_ By _[signature]_ Title _President_ Date _11-13-06_

Print Name _____ By _____ Title _____ Date_____

Franklin Hamilton

Print Name _John Chun_ By _[signature]_ Title _Partner_ Date _11-14-06_

The "Company" is:

1. Company _Creative Insurance Underwriters Inc_ City _Winter Park_ ST _FL_ FHID _372490_

2. Company _Texas Insurance Programs_ City _Roswell_ ST _GA_ FHID _404242_

3. Company _Sun Coast General Insurance Agency_ City _Laguna Hills_ ST _CA_ FHID _348563_

4. Company _____ City _____ ST____ FHID _____

5. Company _____ City _____ ST____ FHID _____

6. Company _____ City _____ ST____ FHID _____

7. Company _____ City _____ ST____ FHID _____

8. Company _____ City _____ ST____ FHID _____

Exhibit E

**Stuart L. Sanders**

| | |
|---|---|
| **From:** | Trey Marinello [tmarinello@franklinhamilton.com] |
| **Sent:** | Tuesday, November 14, 2006 6:53 PM |
| **To:** | boba@appund.com |
| **Subject:** | Executive Summaries |

**Attachments:**      EsummaryIns - Creative Insurance Underwriters - FH(signed).pdf



EsummaryIns -
Creative Insuran...

Bob,

Please find attached the Executive Summaries for the two of the three prospects you had an interest in. The third seller has been traveling and we have not been able to complete a summary for their firm. I will get you that as soon as I am able.

Also, my colleague and I wanted to catch up with you at some point tomorrow to have a quick conversation, when is the best time to reach you?

Regards,
Trey

Trey Marinello
Analyst
Mergers & Acquisitions
Franklin Hamilton, LLC
700 Fairfield Avenue
Stamford | Connecticut | 06902
Tel: 203.353.8885 | Fax: 203.353.3380
TMarinello@FranklinHamilton.com

1

## Stuart L. Sanders

| | |
|---|---|
| **From:** | Kieran Pinney [kpinney@franklinhamilton.com] |
| **Sent:** | Monday, April 30, 2007 6:24 PM |
| **To:** | john@belly.com |
| **Subject:** | FH Agreement |
| **Attachments:** | Creative Insurance Underwriters - FA (signed).pdf; FH Fee Invoice - Creative Insurance Underwriters.pdf |

John,

Again, congratulations on the sale of your company! As we discussed I have attached a copy of our agreement to this email for your review. Since you indicated to me on the phone this afternoon that you had not received my previous emails, please confirm receipt of this email and attachment.

I have also attached a copy of our invoice based on the terms of our agreement. After you have had a chance to look this over please call me to discuss.

Thanks,
Kieran

Kieran Pinney
Senior Associate
Mergers & Acquisitions
Franklin Hamilton
700 Fairfield Ave
Stamford, CT 06902
Tel   203.353.8885
Fax   203.353.3380
Email  kpinney@franklinhamilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission may contain confidential information. This information is solely for the use of the individual(s) or entity to whom or which it was intended. If you have received this email in error, please immediately notify the sender by reply e-mail and delete this e-mail from your files if you are not the intended recipient. Thank you for your compliance have a great day.

2/5/2008

# FRANKLIN HAMILTON

*Middle Market Merger & Acquisition Firm*
*Phone: 888-517-7232*
*Fax: 203-353-3380*

# INVOICE/STATEMENT

Due Date:  May 11th, 2007
Amount:   $125,000
Payable to: Franklin Hamilton LLC
            700  Fairfield Avenue
            Stamford, CT 06902

Creative Insurance Underwriters Inc
2475 Azoma Ave.
Winter Park, FL  32792

---

Client Name:   Creative Insurance Underwriters Inc
Client ID:     372490
Fee Type:      Success Fee

**Payment Records:**

| Date | Amount | Type | Payment Record | Due Date |
|------|--------|------|----------------|----------|
| 4/30/07 | $125,000 | Success fee | 0 | May 11th, 2007 |

**Total Due**      | $125,000 |

Remarks:

---

700 Fairfield Ave.  Stamford, CT 06902    Tel:  888-517-7232    Fax: 203-353-3380

Exhibit G



Visit us daily for the latest industry news and insight.
www.insurancenewsnet.com

📠 Click to Print                                    ☒ Close this Window

# Appalachian Underwriters, Inc. Opens Florida Operations by Acquiring the Renewals of Creative Insurance Underwriters, Inc.

Copyright: PR Newswire
Source: PR Newswire
Wordcount: 267

OAK RIDGE, Tenn., May 16 /PRNewswire/ -- AUI completed the purchase of the renewal rights of Creative Insurance Underwriters brokerage business. AUI had moved quickly on the opportunity based on the momentum realized through the external marketing efforts to Florida throughout 2006. "It was perfect timing," says Bob Arowood, President and COO of AUI. "Florida has been our top growth area the past 8 months and this acquisition has brought an additional 2,000 agency relationships to the table. We also acquired a very complementary carrier portfolio that will be a formidable offering to Florida Agents." He continues, "Agent reception has also been tremendous; the staff and office in Florida are business as usual, but now with an expanded product offering. Additionally, we have also staffed three dedicated marketing representatives to actively get the word out about our markets."

Much of AUI's growth in Florida can be attributed to the robust Residential and Commercial General Contractors Liability markets, Commercial Auto and Workers' Compensation programs, and a recently opened Personal Homeowners program available throughout the state. Furthermore, AUI has put together a team of bilingual underwriters to better meet the needs of the Spanish-speaking agent community.

Appalachian Underwriters, Inc. is a full-service MGA, providing independent agents a national wholesale outlet to multiple specialized markets for Workers' Compensation, Commercial Specialty, and Personal Lines of insurance. To learn more about Appalachian Underwriters, Inc. please visit http://www.appund.com .

Contact: Tagge Stroom Appalachian Underwriters, Inc. (865) 259-1528 tagge.stroom@appund.com http://www.appund.com

This release was issued through eReleases(TM). For more information, visit http://www.ereleases.com.

SOURCE Appalachian Underwriters, Inc.

CONTACT: Tagge Stroom of Appalachian Underwriters, Inc., +1-865-259-1528, tagge.stroom@appund.com

AMERICAN ARBITRATION ASSOCIATION
------------------------------------------------------------x
FRANKLIN HAMILTON, LLC,

               Claimant,        Claim No.  13 195 02048 07

      -against-            **AFFIDAVIT OF SERVICE**

CREATIVE INSURANCE UNDERWRITERS,
INC.,

               Respondent.
------------------------------------------------------------x

STATE OF NEW YORK   )
                   )ss.:
COUNTY OF NEW YORK )

    **MICHAEL CRAWFORD,** being duly sworn, deposes and says:

    1. I am over the age of 18 years, am not a party to this proceeding, and reside in Queens,

New York.

    2. On February 13, 2008, I served a true copy of the annexed Affidavits of John Chun and

Kieran Pinney, with Exhibits A through G, on the Respondent, Creative Insurance Underwriters,

Inc., by mailing same, enclosed in a sealed envelope to which postage for first-class mail was

affixed, in a post office or official depository of the United States Postal Service located in the

State of New York, addressed as follows:

Creative Insurance Underwriters, Inc.
2475 Aloma Avenue
Winter Park, FL 32792
Attn: Mr. John George

                                        MICHAEL S. CRAWFORD

Sworn to before me on the
13th day of February, 2008

   Notary Public

KENNETH J. NOTTO
Notary Public, State of New York
No. 01NO3016382
Qualified in Nassau County
Commission Expires November 20, 20 10

# KAZLOW & KAZLOW

## ATTORNEYS AT LAW

237 W. 35th Street, 14th Floor
New York, NY 10001
212-947-2900
800-772-9870
FAX 212-563-0629

April 7, 2008

VIA FAX (401) 435-6529

Mr. John H. Fenimore, Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

      Re: Franklin Hamilton, LLC v. Creative Underwriters Inc.
         Arb. No. 13 195 02048 07
         Our file # 57557

Dear Mr. Fenimore:

      I am sending you a billing statement setting forth the time charges of Claimant's attorneys in the above-referenced matter. Although not indicated on the face of the statement, I am the attorney who performed all of the services indicated therein. As far as costs go, your records should show that Claimant has paid $2,300.00, including the $1,800.00 initial filing fee and the $500.00 neutral compensation deposit.

      Please forward this letter and the billing statement to Mr. Dornbaum, and thank you in advance for your attention to this matter.

                    Very truly yours,

                    KAZLOW & KAZLOW

                    Stuart L. Sanders

cc: Creative Insurance Underwriters, Inc.
    Attn: Mr. John George

Encl.

Kazlow & Kazlow
237 West 35th Street
New York, NY  10001
(212) 947 2900   Fax (212 563-0629


Invoice submitted to:
Franklin Hamilton LLC
700 Fairfield Avenue
Stamford CT 06902



April 07, 2008

In Reference To:    57557 - Franklin Hamilton, LLC v. Creative Insurance Underwriters,
                    Inc.
Invoice #10258


        Professional Services

|  | | Hrs/Rate | Amount |
|---|---|---|---|
| 7/26/2007 | Reviewed client documents for new claim | 0.50<br>250.00/hr | 125.00 |
| 7/31/2007 | Exchanged e-mails with M. Su re: how we will proceed with new claim | 0.30<br>250.00/hr | 75.00 |
| 8/9/2007 | Telephone call with M. Su re: demand letter to be sent | 0.20<br>250.00/hr | 50.00 |
| 8/16/2007 | Drafted and sent demand letter to debtor | 0.30<br>250.00/hr | 75.00 |
| 8/31/2007 | Telephone call with A. Recine re: case status | 0.10<br>250.00/hr | 25.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine recommending that we proceed with arbitration | 0.20<br>250.00/hr | 50.00 |
| 9/7/2007 | Reviewed news releases concerning acquisition of debtor's assets on line | 0.40<br>250.00/hr | 100.00 |
|  | Drafted Statement of Claim | 1.50<br>250.00/hr | 375.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine requesting comments on draft Statement of Claim | 0.10<br>250.00/hr | 25.00 |
| 9/11/2007 | Drafted and sent follow-up e-mail to M. Su and A. Recine requesting comments on draft Statement of Claim | 0.10<br>250.00/hr | 25.00 |

Franklin Hamilton LLC

Page    2

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 9/11/2007 | Telephone call with A. Recine re: client's comments on draft Statement of Claim | 0.20 250.00/hr | 50.00 |
|  | Revised Statement of Claim in light of client's comments | 0.30 250.00/hr | 75.00 |
| 9/24/2007 | Prepared Demand for Arbitration | 0.30 250.00/hr | 75.00 |
|  | Drafted letter to American Arbitration Association transmitting opening documents and filing fee | 0.20 250.00/hr | 50.00 |
| 10/8/2007 | Reviewed letter from R. Leif of AAA re: administrative conference call to be held on 10/12/07 | 0.10 250.00/hr | 25.00 |
|  | Drafted and sent e-mail to R. Leif noting that respondent refused receipt of Demand for Arbitration sent by certified mail | 0.10 250.00/hr | 25.00 |
| 10/11/2007 | Telephone call with M. Su and A. Recine re: information needed for conflicts checklist | 0.20 250.00/hr | 50.00 |
|  | Prepared conflicts checklist | 0.20 250.00/hr | 50.00 |
|  | Drafted and sent fax to R. Leif with Claimant's conflicts checklist | 0.10 250.00/hr | 25.00 |
| 10/12/2007 | Administrative conference call with R. Leif | 0.30 250.00/hr | 75.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine re: case status | 0.10 250.00/hr | 25.00 |
| 10/19/2007 | Drafted and sent e-mail to R. Leif inquiring when he will send summary of administrative conference call and arbitrator resumes | 0.10 250.00/hr | 25.00 |
| 10/26/2007 | Drafted and sent follow-up e-mail to R. Leif inquiring when he will send summary of administrative conference call and arbitrator resumes | 0.10 250.00/hr | 25.00 |
|  | Telephone call with R. Leif re: arbitrator resumes to be sent on 10/29/07 | 0.10 250.00/hr | 25.00 |
| 10/29/2007 | Reviewed letter from R. Leif with arbitrator resumes | 0.40 250.00/hr | 100.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine transmitting copies of arbitrator resumes, requesting comments | 0.10 250.00/hr | 25.00 |
|  | Drafted and sent e-mail to R. Leif requesting that hyphen be deleted from Respondent's name in future correspondence | 0.10 250.00/hr | 25.00 |

Franklin Hamilton LLC                                                                    Page    3

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 11/21/2007 | Telephone call with R. Leif re: submission of arbitrator preferences | 0.10<br>250.00/hr | 25.00 |
|  | Drafted and sent fax to R. Leif with Claimant's arbitrator preference list | 0.20<br>250.00/hr | 50.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine re: case status | 0.10<br>250.00/hr | 25.00 |
| 12/5/2007 | Drafted and sent e-mail to R. Leif re: status of arbitration selection | 0.10<br>250.00/hr | 25.00 |
| 12/6/2007 | Reviewed e-mail from R. Leif re: status of arbitration selection | 0.10<br>250.00/hr | 25.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine re: case status | 0.10<br>250.00/hr | 25.00 |
| 12/10/2007 | Reviewed letter from R. Leif re: appointment of M. Dornbaum as arbitrator | 0.10<br>250.00/hr | 25.00 |
|  | Drafted and sent e-mail to R. Leif re: availability for preliminary hearing | 0.10<br>250.00/hr | 25.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine re: case status | 0.10<br>250.00/hr | 25.00 |
| 12/31/2007 | Drafted and sent e-mail to R. Leif inquiring re: scheduling of preliminary hearing | 0.10<br>250.00/hr | 25.00 |
| 1/4/2008 | Attempt to reach R. Leif by telephone | 0.10<br>250.00/hr | 25.00 |
| 1/7/2008 | Another attempt to reach R. Leif by telephone | 0.10<br>250.00/hr | 25.00 |
| 1/8/2008 | Telephone call from M. Rutherford of AAA re: preliminary hearing to be held on 01/17/08 | 0.10<br>250.00/hr | 25.00 |
|  | Reviewed letter from M. Rutherford of AAA re: preliminary hearing to be held on 01/17/08 | 0.10<br>250.00/hr | 25.00 |
|  | Drafted and sent e-mail to M. Su and A. Recine re: case status | 0.10<br>250.00/hr | 25.00 |
| 1/17/2008 | Preliminary hearing conference call with M. Dornbaum and J. Fenimore of AAA | 0.20<br>250.00/hr | 50.00 |
| 2/5/2008 | Drafted affidavits from J. Chun and K. Pinney | 2.50<br>250.00/hr | 625.00 |

Franklin Hamilton LLC

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 2/5/2008 | Telephone calls with M. Su re: facts of case for inclusion in affidavits | 0.30 250.00/hr | 75.00 |
| | Drafted and sent fax to M. Su with affidavits for J. Chun and K. Pinney | 0.20 250.00/hr | 50.00 |
| | Attempt to reach R. Leif by telephone to learn status of scheduling order | 0.10 250.00/hr | 25.00 |
| 2/6/2008 | Telephone call with A. Recine re: return of signed affidavits | 0.10 250.00/hr | 25.00 |
| 2/7/2008 | Telephone call with K. Ramsey of AAA re: R. Leif's absence and lack of a scheduling order | 0.10 250.00/hr | 25.00 |
| | Telephone call with A. Recine re: need to re-excute and resend signed affidavits | 0.10 250.00/hr | 25.00 |
| | Telephone calls with J. Fenimore re: scheduling order, extra week to submit affidavits, submission of attorney time charges | 0.20 250.00/hr | 50.00 |
| 2/8/2008 | Reviewed signed affidavits of J. Chun and K. Pinney, and scheduling order | 0.20 250.00/hr | 50.00 |
| 2/13/2008 | Finalized papers for submission to M. Dornbaum | 0.40 250.00/hr | 100.00 |
| | Telephone calls with J. Fenimore re: how service copy of papers is to be sent | 0.20 250.00/hr | 50.00 |
| 2/20/2008 | Reviewed letter from J. Fenimore re: papers received and forwarded to M. Dornbaum | 0.10 250.00/hr | 25.00 |
| 3/17/2008 | Reviewed letter from J. Fenimore re: hearing closed | 0.10 250.00/hr | 25.00 |
| | Drafted and sent e-mail to M. Su and A. Recine re: case status | 0.10 250.00/hr | 25.00 |
| 3/27/2008 | Reviewed invoice from AAA | 0.10 250.00/hr | 25.00 |
| | Telephone call with J. Fenimore re: AAA's invoice and when decision will be issued | 0.10 250.00/hr | 25.00 |
| | Drafted and sent e-mail to M. Su and A. Recine transmitting copy of AAA's invoice | 0.10 250.00/hr | 25.00 |
| 4/2/2008 | Reviewed letter from J. Fenimore re: reopening of case for submission of attorney time charges; reviewed file and time charges | 0.30 250.00/hr | 75.00 |

Page    5

Franklin Hamilton LLC

|  | Hours | Amount |
|---|---|---|
| For professional services rendered | 13.80 | $3,450.00 |
| Balance due | | $3,450.00 |